**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| KIMBERLY-CLARK CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  3:18cv02 |
| | ) | |
| v. | ) | |
| | ) | |
| MCKESSON MEDICAL-SURGICAL INC., | ) | |
| VICTOR BAKKAR; CLARE MEDICAL, | ) | |
| INC.; MDR SPECIALTY DISTRIBUTION | ) | |
| CORPORATION; VENUITY | ) | |
| CORPORATION; AND HERBERT A. | ) | |
| TOMS III, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## REPLY IN SUPPORT OF CLARE MEDICAL DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

ARGUMENT ......................................................................................................... 4

I.      Virginia Law Governs Plaintiff's Claims Against The Clare Medical Defendants
        Because Virginia Is The Place Of The Clare Medical Defendants' Alleged
        Wrongs ..................................................................................................... 4

II.     Plaintiff's Tortious Interference Claims Should Be Dismissed ........................ 5

        A.      Claim III (tortious interference with Plaintiff/McKesson contract) should
                be dismissed ................................................................................... 5

        B.      Claim XII (tortious interference with Plaintiff/Vizient contract) should be
                dismissed ........................................................................................ 8

III.    Plaintiff's Unjust Enrichment Claim Should Be Dismissed ............................. 9

IV.     Plaintiff's Tortious Interference With Prospective Economic Advantage Claim
        Should Be Dismissed ................................................................................. 11

V.      Plaintiff's Civil Conspiracy Claim Should Be Dismissed .............................. 13

VI.     Plaintiff's Breach Of Contract Claim Against Clare Medical Should Be Dismissed ...... 15

VII.    Plaintiff's Claim For Unfair Trade Practices Should Be Dismissed................ 16

VIII.   Plaintiff's Lanham Act Claim Should Be Dismissed .................................... 17

IX.     Plaintiff's "Alter Ego" Claim Should Be Dismissed Because "Alter Ego" Is Not A
        Cause Of Action....................................................................................... 18

X.      Plaintiff's Claims Against Herb Toms Should Be Dismissed Because Plaintiff Has
        Not Alleged Sufficient Facts To Pierce The Corporate Veil ........................... 19

CONCLUSION..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*17th Street Associates, LLP v. Markel Intern. Ins. Co. Ltd.*,
    373 F. Supp. 2d 584 (E.D. Va. 2005) ...................................................................12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................10, 14

*Blackwell v. Gen. Dynamics Land Sys., Inc.*,
    2010 WL 2639829 (E.D. Va. June 28, 2010.........................................................16

*Commercial Bus. Sys., Inc. v. Halifax Corp.*,
    484 S.E.2d 892 (Va. 1997)....................................................................................11

*Cox v. Mag. Mut. Ins. Co.*,
    2015 WL 1640513 (E.D. Va. April 9, 2015) .....................................................12, 13

*Davison v. Loudon Cnty. Bd. of Supervisors*,
    2016 WL 4801617 (E.D. Va. Sept. 14, 2016.)...................................................4

*Dixon v. Foot Locker, Inc.*,
    623 Fed App'x 594 (4th Cir. 2015) .....................................................................7

*Dunlap v. Cottman Transmission Sys., LLC*,
    754 S.E.2d 313 (Va. 2014)....................................................................................5

*Feeley v. Total Realty Management*,
    660 F. Supp. 2d 700 (E.D. Va. 2009) ..................................................................14

*Firestone v. Wiley*,
    485 F. Supp. 2d 694 (E.D. Va. 2007) ..................................................................13

*Goulmamine v. CVS Pharmacy, Inc.*,
    138 F. Supp. 3d 652, 672 (E.D. Va. 2015) (Payne, J.) ........................................7

*Hilb Rogal & Hobbs Co. v. Rick Strategy Partners, Inc.*,
    2006 WL 5908727 (E.D. Va. Feb. 10, 2006) (Payne, J.)....................................4, 5

*Hukill v. Auto Care, Inc.*,
    192 F.3d 437 (4th Cir. 1999) ...............................................................................20

*Kern v. Freed Co., Inc.*,
    299 S.E.2d 363 (Va. 1983)....................................................................................10

*Masco Contractor Services East, Inc. v. Beals*,
   279 F. Supp. 2d 699 (E.D. Va. 2003) ........................................................................11

*Milton v. IIT Research Institute*,
   138 F.3d 519 (4th Cir. 1998) .........................................................................................5

*Monoflo Intern., Inc. v. Sahm*,
   726 F. Supp. 121 (E.D. Va. 1989) ..........................................................................17, 18

*Morris v. Wachovia Securities, Inc.*,
   277 F. Supp. 2d 622 (E.D. Va. 2003) (Payne, J.) ....................................................14

*Perpetual Real Estate Svcs., Inc. v. Michaelson Properties, Inc.*,
   974 F.2d 545 (4th Cir. 1992) .....................................................................................19

*Standard Process, Inc. v. Total Health Discount, Inc.*,
   559 F. Supp. 2d 932 (E.D. Wisc. 2008).....................................................................18

*United States v. A.H. Fischer Lumber Co.*,
   162 F.2d 872 (4th Cir. 1947) .....................................................................................13

*Vitol, S.A. v. Primerose Shipping Co. Ltd.*,
   708 F.3d 527 (4th Cir. 2013) .....................................................................................20

**Statutes**

15 U.S.C. § 1125(a) ............................................................................................17, 18

Wis. Stat. § 100.18..................................................................................................16

**Rules**

Federal Rule of Civil Procedure 9(b).........................................................................14

Federal Rule of Civil Procedure 12 ................................................................. *passim*

## INTRODUCTION

If a customer purchases a television from a seller for a price that happens to be lower than the manufacturer and seller agreed upon, the manufacturer cannot sue the *customer* to recoup the difference.  Its remedy is with the seller, the party it had a contract with.  But that is precisely what Plaintiff asks the Court to permit here.  Customer Clare Medical logged on to seller McKesson's website in 2016, purchased products manufactured by Plaintiff for a price Plaintiff alleges was lower than Plaintiff's contract with McKesson permitted, and manufacturer Plaintiff wants to recoup the difference from customer Clare Medical.  In its Response to Clare Medical's well-founded Motion, through speculation, surmise, and assertions not found in its Amended Complaint, Plaintiff tries to avoid that single truth so fatal to all its claims.

Plaintiff alleges Clare Medical's 2016 purchases were wrongful because McKesson's listed price was only supposed to be available for direct providers of health care.  But Plaintiff's Amended Complaint does not allege that Plaintiff or McKesson made Clare Medical aware of that alleged price restriction, which they did not.  Plaintiff does not allege that its products were marked "not for resale" or that McKesson's website informed would-be buyers that McKesson's sales of Plaintiff's products were restricted to direct providers.  Rather, Plaintiff claims that McKesson allegedly breached its agreement with Plaintiff by selling to Clare Medical and wants Clare Medical, McKesson's customer, to answer (and pay) for McKesson's sins now that McKesson has settled out of the case.

To try to rope in Clare Medical and the rest of the Clare Medical Defendants, Plaintiff says that Clare Medical "represented" itself to others, not Plaintiff, to be a direct healthcare provider in order to qualify for the prices on McKesson's website.  But the only "representation" the Amended Complaint claims is an alleged representation to non-party *Vizient*, not Plaintiff or McKesson, long after the sales Plaintiff complains about.  Plaintiff says that Clare Medical

represented itself to Vizient as a "physician office."  Plaintiff does not allege facts to show a Clare Medical Defendant made that statement.  And there is no allegation that McKesson relied on Vizient for information about Clare Medical's pricing eligibility.  Plaintiff just points to this alleged "representation," alleges that McKesson sold products to Clare Medical, talks about those two allegations in the same context, and, without actually alleging such a connection, hopes that the Court will assume that the two are connected.  Indeed, had Plaintiff made an allegation that McKesson relied on the Vizient statement, that allegation would be directly contrary to Plaintiff's Amended Complaint, which says that McKesson "knew" that Clare Medical is "a reseller," and that "Vizient's pricing portal is not an authoritative source for verifying a customer's eligibility for acute care pricing … and is therefore not a proper method for verifying a customer's eligibility."  (Am. Compl. ¶¶ 53, 99.)

In any event, the Vizient statement is irrelevant because it occurred no earlier than 2017.  The Amended Complaint's screenshot of the alleged Vizient posting shows a "Member Start Date" for Clare Medical of "July 1, 2017."  (*Id.* at ¶ 51.)  McKesson's allegedly improper sales occurred between "May 21, to November 12, 2016."  (*Id.* at ¶ 45.)  It goes without saying that an alleged representation in July 2017 did not cause allegedly improper sales in 2016.  And, there is no allegation of a similar Vizient statement about any other Clare Medical Defendant.

In an attempt to avoid dismissal of its claims against the Clare Medical Defendants, Plaintiff resorts to speculation, surmise, and misdirection.  Throughout its Response, Plaintiff discusses the alleged July 2017 Vizient representation in the same context as the summer 2016 sales from McKesson to Clare Medical, so-as to create the illusion that the alleged Vizient representation somehow played a role in McKesson's summer 2016 sales, which of course it could not have.

The entirety of Plaintiff's Response hinges on the Court not noticing that Plaintiff conflates the 2017 alleged Vizient representation with the 2016 sales:

- Plaintiff's defense of its tortious interference claims is that it can show Clare Medical's knowledge of Plaintiff and McKesson's alleged contract restrictions in 2016 because "why [else] would the Clare Medical Defendants have represented Clare Medical as a 'physician office'" to Vizient. (Br. at PgID #554.)

- Plaintiff's defense of its unjust enrichment claim is that the Clare Medical Defendants "knew of the benefit" being conferred in 2016 because "there is no other reason for the Clare Medical Defendants to have represented themselves as 'own-use' care providers." (Br. at PgID #557.)

- Plaintiff's defense of its tortious interference with business expectancy claim is that it can prove "improper methods" for Clare Medical's 2016 purchases from McKesson through "Clare Medical's misrepresentation to Vizient." (Br. at PgID #560.)

- Plaintiff's defense of its civil conspiracy claim related to Clare Medical's 2016 purchase of goods from McKesson is "that Clare Medical lied to Vizient about its status" and that constitutes a "wrongful act." (Br. at PgID #562.)

There is a reason why Plaintiff's Amended Complaint suddenly ballooned to 34 claims, 16 causes of action, added multiple new defendants, and changed the substantive law relied upon from Virginia to Wisconsin: to try to toss enough chaff and uncertainty into the air in an effort to obscure the simple truth of what happened here and pass through to the expensive discovery phase in order to try to discover a basis for its claims. But this case is not as complicated as Plaintiff's Response suggests. A distributor allegedly posted for sale and sold a manufacturer's product for less than permitted by the manufacturer's contract with the distributor, and the distributor's customer saw the product for sale and bought it. The question before the Court is whether the law supplies a cause of action for a manufacturer to chase down the *customer* to recoup the difference. It does not. Plaintiff's attempts to avoid dismissal by conjuring grand tales of fraud and skullduggery based on speculation and surmise of facts not plead in the Amended Complaint is completely unavailing. The Amended Complaint should be dismissed with prejudice.

## ARGUMENT

**I.   Virginia Law Governs Plaintiff's Claims Against The Clare Medical Defendants Because Virginia Is The Place Of The Clare Medical Defendants' Alleged Wrongs**

Plaintiff's Amended Complaint, without explanation, switched its reliance from Virginia law to Wisconsin law.  The Amended Complaint says in a footnote that Plaintiff "suffered harm when it shipped goods from its Wisconsin facilities," and therefore "Wisconsin's substantive law should apply" to Plaintiff's tort claims.  (Am. Compl. p. 24 n.6.)  The Clare Medical Defendants' Motion to Dismiss pointed out that, for tort claims, binding Fourth Circuit law is that "Virginia's choice of law rule selects the law of the state in which the wrongful act took place, *wherever the effects of that act are felt*."  *Hilb Rogal & Hobbs Co. v. Rick Strategy Partners, Inc.*, 2006 WL 5908727, at \*6 (E.D. Va. Feb. 10, 2006) (Payne, J.) (emphasis added) (quoting *Milton v. IIT Research Institute*, 138 F.3d 519, 522 (4th Cir. 1998)).

Plaintiff's Response ignores entirely *Hilb* and the Clare Medical Defendants' argument, and instead makes *new factual allegations* in its brief, arguing that Wisconsin law applies because the Clare Medical Defendants allegedly "caused financial harm to Kimberly-Clark's baby and childcare division in Wisconsin by depriving Kimberly-Clark of funds from wrongfully obtained preferred pricing."  (Br. at PgID #551.)  Plaintiff's Amended Complaint does not even *mention* "Kimberly-Clark's baby and childcare division."   Indeed, Plaintiff's Amended Complaint does not even mention *Wisconsin* except for the footnote where Plaintiff alleges that Wisconsin law applies.  It is well settled that "the Court may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion."   *Davison v. Loudon Cnty. Bd. of Supervisors*, 2016 WL 4801617, at \*3 (E.D. Va. Sept. 14, 2016.)  Plaintiff's attempt to allege new facts in a Rule 12 brief to support its choice of law argument respectfully should be rejected.

And, Plaintiff's new facts would not change the outcome.  Plaintiff is correct that the law of the "place of the wrong," defined as the "place where the last event necessary to make an act liable for an alleged tort took place," governs tort claims.  However, Plaintiff's assertion that the "last event necessary to make an act liable" is harm to Plaintiff, and therefore the location of the *harm* governs, was explicitly rejected by the Fourth Circuit in *Milton* and this Court in *Hilb*.  In *Hilb*, This Court explained:

> The word 'tort' has a settled meaning in Virginia.  A tort is any civil wrong or injury; a wrongful *act*.  Thus Virginia's choice of law rule selects the law of the state in which the wrongful *act* took place, *wherever the effects of that act are felt*.

2006 WL 5908727, at *6 (quoting *Milton*, 138 F.3d at 522) (emphasis added).  This Court continued, again quoting the Fourth Circuit's decision in *Milton*, "If the Court were to find that the place of the wrong was simply the place where the effects of the injury are felt, it 'would effectively replace Virginia's traditional rule … with default application of the law of plaintiff's domicile."  *Id.* (quoting *Milton*, 138 F.3d at 522).

Plaintiff's position was explicitly rejected by the Fourth Circuit in *Milton* and explicitly rejected by this Court in *Hilb*.  The alleged "wrongful *acts*" of the Clare Medical Defendants are purchasing Plaintiff's products from McKesson in Virginia and reselling them from Virginia.  Under binding Fourth Circuit law, Virginia law applies.

## II.   **Plaintiff's Tortious Interference Claims Should Be Dismissed**

### A.   Claim III (tortious interference with Plaintiff/McKesson contract) should be dismissed

One cannot unintentionally interfere with a contract.  Tortious interference is, after all, an "intentional tort."  *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 319 (Va. 2014).  Plaintiff's Amended Complaint alleges that "Clare Medical and Toms knew that McKesson was an authorized distributor of Kimberly-Clark products, and that an agreement governed the

distributor arrangement between Kimberly-Clark and McKesson."  (Am. Compl. ¶ 92.)  The Clare Medical Defendants' Motion to Dismiss explains why, even if this were true, it does not state a claim because knowing that a contract exists is a far cry from knowing what a contract obligates the parties to do or not to do.  One cannot intentionally interfere with a contract merely by knowing it exists.  The defendant must know that its acts are causing one of the parties to breach their obligations under the contract and intend for it to do so.

Plaintiff does not contest this deficiency.  Rather, Plaintiff's *Response Brief* insinuates the Clare Medical Defendants were aware of Plaintiff's contract terms with McKesson because "why [else] would the Clare Medical Defendants have represented Clare Medical as a 'Physician Office,' [to Vizient] when it fact it was a reseller."  (Br. at PgID 553-54.)

As an initial matter, the alleged "representation" Plaintiff's Response references was allegedly to non-party Vizient in 2017.  Yet Plaintiff attempts to use it to surmise Clare Medical's knowledge of Plaintiff's contract terms with *McKesson* in 2016.  But the Amended Complaint does not allege that McKesson relied on or even used the Vizient portal as a resource for information on who it could and could not sell to.  And Plaintiff itself admits that the Vizient portal is not an authoritative source for a customer's pricing eligibility.  (Am. Compl. ¶ 53.) Yet Plaintiff seeks to establish Clare Medical's knowledge of specific terms of Plaintiff's alleged contract with McKesson *based on an alleged representation to Vizient*.  Here again, without actually alleging a causal connection between the alleged representation and the complained of sales,  Plaintiff references the 2016 McKesson sales and the alleged 2017 Vizient representation in the same context, hoping the Court will conflate the two.

Moreover, throughout its Response, Plaintiff relies on speculation and surmise rather than the deficient facts alleged in its pleading.  Calling a speculation an "inference" does not make it

so.  For example, instead of alleging facts that would show the Clare Medical Defendants were aware of McKesson's responsibilities and restrictions under the alleged contract, Plaintiff insinuates *in its brief* that the Clare Medical Defendants must have been aware based on other allegations in the Amended Complaint.  (Br. at PgID #554.)  The Fourth Circuit has held squarely that a party cannot "survive a motion to dismiss" with "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."  *Dixon v. Foot Locker, Inc.*, 623 Fed App'x 594, 594 (4th Cir. 2015) (cleaned up).  By failing to affirmatively allege facts that would show Clare Medical's knowledge of alleged sales restrictions on McKesson and instead insinuating knowledge based on other allegations, Plaintiff builds "one inference upon another" in a failed attempt to bridge fatal factual gaps in its claims.

Plaintiff also misses the point when it tells the Court that "there is no reliance element in a tortious interference claim."  (Br. at PgID #554.)  A necessary element of tortious interference is causation.  *See, e.g.*, *Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 672 (E.D. Va. 2015) (Payne, J.)  Plaintiff's tortious interference claim against Clare Medical and Mr. Toms is predicated on a "representation" they allegedly made to Vizient.  But as McKesson did not rely on the alleged "representation" when making the sales to Clare Medical, the representation did not *cause* Plaintiff's harm.  Plaintiff's failure to allege facts to show McKesson's reliance is not a failure to plead a reliance "element," it is a failure to allege causation.

Finally, Plaintiff's Response states in conclusory fashion that the alleged "misrepresentations to McKesson (and Vizient) caus[ed] McKesson to improperly extend acute-care hospital pricing to Clare Medical."  (Br. at PgID #555.)  This conclusory assertion is not accompanied by a citation to the Amended Complaint.  And for good reason: the Amended Complaint contains no such allegation.  Rather, the Amended Complaint alleges the opposite.

Plaintiff's Amended Complaint says that McKesson "knew" that Clare Medical is "a reseller." (Am. Compl. ¶ 99.)  And if McKesson "knew" that Clare Medical is "a reseller," then McKesson necessarily could not have relied on any alleged Clare Medical representation to Vizient asserting the contrary.  Plaintiff fails to adequately allege causation and the claim should be dismissed.

> B.  Claim XII (tortious interference with Plaintiff/Vizient contract) should be dismissed

Plaintiff's defense of claim XII also involves Plaintiff making new accusations not contained in the Amended Complaint.  The Clare Medical Defendants showed in their Motion to Dismiss that Plaintiff failed to allege that Vizient breached a contract with McKesson and therefore the Clare Medical Defendants could not be liable for tortious interference with that alleged contract.  Plaintiff's Response tries to fill that gap by newly speculating that Vizient "breached" an alleged contract with Plaintiff by allowing Clare Medical to "register … without any apparent mechanism to certify own use status."  (Br. at PgID #555-56.)  In support, Plaintiff cites paragraphs 51 and 52 of the Amended Complaint.  (*Id.*)  But those paragraphs say nothing about Vizient's alleged duties to Plaintiff.  Instead, they speculate about what *Clare Medical* was "required" to do in Vizient's online portal.  *See* Am. Compl. ¶ 51,[1] 52.  Incredibly, Plaintiff ignores the very next paragraph in the Amended Complaint, Paragraph 53, in which it says "Vizient's pricing portal is not an authoritative source … and not a proper method for verifying a customer's eligibility."  (Am. Compl. ¶ 53.)

---

[1] The Court need not credit Plaintiff's conclusory allegation that Clare Medical was a Vizient member "in 2016" since Plaintiff's alleged screenshot of Vizient's portal, *in the same paragraph* of the Complaint, shows unequivocally Clare Medical's "Member Start Date" to be 7/1/2017."

Plaintiff's Response Brief alleged that particular actions by Vizient breached Plaintiff's alleged contract with Vizient and cited two paragraphs of the Amended Complaint apparently hoping no one would check whether the cited allegations actually match the proposition Plaintiff holds them out for.  They do not match; nor is it even close.  The claim should be dismissed.

## III.   Plaintiff's Unjust Enrichment Claim Should Be Dismissed

Plaintiff's defense of its unjust enrichment claim likewise relies on the Court accepting as "obvious" speculative allegations not contained in the Amended Complaint.  Plaintiff says that it was "obvious" that the Clare Medical Defendants had "knowledge of the benefit," which Plaintiff says is acute care pricing, because "they made affirmative misrepresentations to secure those prices."  (Br. at PgID #556-57.)  Plaintiff once again asserts a "representation" of no consequence to the claims in this case: a Vizient posting in 2017 that lists Clare Medical as a "physician office," a statement that of course could play no role in McKesson's 2016 sales to Clare Medical that are the subject of this action.

No matter how many times Plaintiff's Response speculates that Vizient's post was somehow linked to or a requirement of Clare Medical's purchases from McKesson, it is critical to remember that such an allegation never occurs in the Amended Complaint.  Rather, Plaintiff simply repeats its speculation about the 2017 Vizient post in close proximity to allegations about McKesson's 2016 sales to Clare Medical to give the illusion that the two are connected.  But Plaintiff's Amended Complaint never says such a connection exists.  This is a sleight of hand in an attempt to avoid dismissal.  Indeed, the 2017 Vizient post on which Plaintiff places so much emphasis is absent from the original Complaint.  (Doc. #1.)  It was only when the Clare Medical Defendants filed a Motion to Dismiss pointing out that Plaintiff did not allege actual representations by Clare Medical that Plaintiff began referencing the 2017 Vizient post, and even then the Amended Complaint is crystal clear McKesson did not and could not rely on it.  (See

Am. Compl. ¶¶ 49, 53) (McKesson "had every reason to know—and, indeed, did know—that [Vizient listing representations] were not true."); ("Vizient's pricing portal is not an authoritative source … [and] not a proper method for verifying a customer's eligibility.")

The Clare Medical Defendants' Motion to Dismiss explained why Plaintiff could not satisfy the "expectation of payment" element of unjust enrichment as Clare Medical's purchases were directly from McKesson and Plaintiff has not alleged facts to show why the Clare Medical Defendants should have expected to pay Plaintiff.  In Response, Plaintiff says "the Clare Medical Defendants should have known that once their scheme had been uncovered they would be liable to the victim."  (Br. at PgID #577.)  Plaintiff's argument is, essentially, "the Clare Medical Defendants should expect to pay Plaintiff damages for unjust enrichment because they are liable for unjust enrichment."  That is not how unjust enrichment or Rule 12 works.  Plaintiff's Response assumes the soundness of its conclusory speculative allegations as satisfying the elements of unjust enrichment *as its basis* to satisfy the elements of unjust enrichment.  Plaintiff here simply repeats legal conclusions—the Clare Medical Defendants "perpetrate[d] fraud," had a "scheme," and "engaged in ... wrongdoing" and therefore should "expect to pay Plaintiff" (*id.*)—and asks the Court to hold that these conclusory meaningless phrases carry its unjust enrichment claim over the line.  They don't.  *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Rule 12(b)(6) "requires more than labels and conclusions.")  The allegations have nothing to do with Virginia's actual requirements of unjust enrichment under which a Plaintiff must show that, in the circumstances of the benefit being conferred, the defendant should have reasonably expected to pay *the plaintiff* for the benefit.  *See Kern v. Freed Co., Inc.*, 299 S.E.2d 363 (Va. 1983).  Plaintiff pleads no such facts here.

Plaintiff's argument that the Clare Medical Defendants should expect to lose a lawsuit and therefore should expect to pay Plaintiff, while admittedly novel, is not law. The claim should be dismissed.

## IV.   Plaintiff's Tortious Interference With Prospective Economic Advantage Claim Should Be Dismissed

Plaintiff continues to prosecute its tortious interference with prospective economic advantage claim under Wisconsin law. (Br. at PgID 558-59.) As explained in Section I, *supra*, Wisconsin law does not apply to this action because the alleged wrongful "*acts*" by the Clare Medical Defendants occurred in Virginia. Thus, Virginia law applies.

The "economic advantage" Plaintiff alleges was interfered with is far too speculative to be actionable. Plaintiff says that the Clare Medical Defendants' sales "reduc[ed] overall demand for Huggies diapers and training pants from Kimberly-Clark's legitimate distributors." (Am. Compl. ¶ 135.) But tortious-interference claims only "provide a legal remedy where a particular party's *specific, existing* contract or business expectancy or opportunity has been interfered with in a tortious manner." *Masco Contractor Services East, Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003) (emphasis in original). A plaintiff's factual allegations "must establish a 'probability' of future economic benefit to a plaintiff. Proof of a 'possibility' that such benefit will accrue is insufficient." *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 897 (Va. 1997). Here, Plaintiff fails to allege facts showing that *any* of its distributors had lower sales as a result of the Clare Medical Defendants' sales. Plaintiff's hope that, absent the Clare Medical Defendants' sales, customers would have purchased from a "legitimate distributor" and increased distributors' sales is just that: hope. It is not a "*specific*," "*existing*" business expectancy or opportunity. *Masco*, 279 F. Supp. 2d at 709 (emphasis in original). *See also id.* at 710 (mere expectation of gaining "market clout" is irrelevant because "even if proven, this

would not make out the element of an *existing* contract or business relationship, which is necessary to a successful claim of tortious interference.") (emphasis in original).

Under Virginia law, "the tort of intentional interference with a business expectancy contain a fifth, unstated element to the prima facie case: a competitive relationship between the party interfered with and the interferor." *17th Street Associates, LLP v. Markel Intern. Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 600 (E.D. Va. 2005).  The Clare Medical Defendants show in their Motion that the Amended Complaint does not allege that Plaintiff is a "competitor" with any of the Clare Medical Defendants and therefore the claim fails at the outset.  Plaintiff responds by asserting without authority that "the Clare Medical Defendants cannot avail themselves of the competitor privilege because they interfered with Kimberly-Clark's prospective economic advantage through misrepresentations, which were improper means that preclude a claim of privilege."  (Br. at PgID #560.)

First, the "competitor" requirement is not a "privilege" and Plaintiff cites no law suggesting that the requirement is a privilege.  Nor does Plaintiff cite any law for its argument that "improper means … preclude a claim of privilege."  Plaintiff just says it.  But Plaintiff is wrong.  The opposing parties having a "competitive relationship" and the defendant employing "improper methods" are *separate requirements* under Virginia law.  *See Cox v. Mag. Mut. Ins. Co.*, 2015 WL 1640513, at *4-5 (E.D. Va. April 9, 2015) (improper methods are an "added element" of claim and "competitive relationship" is a "separate element [of] … a prima facie case of tortious interference with a business expectancy.")  Plaintiff's unsupported proclamation that by satisfying one requirement it need not satisfy the other finds no support in the law and, indeed, Plaintiff offers none.

The Clare Medical Defendants also pointed out that Plaintiff's tortious interference with prospective economic advantage claim, brought only against Clare Medical and Mr. Toms, requires a showing of "improper methods" and Plaintiff only arguably alleged improper methods by Venuity.  Plaintiff's Response argues that this "does not matter" because "none of the Clare Medical Defendants had any legal significance apart from one another." (Br. at PgID #560-61.)

Plaintiff turns this action into shell game.  Plaintiff makes specific claims against specific corporations and then when it is pointed out that Plaintiff is mixing the allegations between them, Plaintiff says it "does not matter" because they are all the same.  (*Id.*)  Plaintiff's tactics should be rejected.  "A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice and the purpose of the process is to bring parties into court." *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947).  Plaintiff plead specific allegations against specific corporate entities.  Plaintiff should not be permitted a retroactive catch-all mulligan by asserting the bald conclusion that they are "all the same."  The claim should be dismissed.

## V.   Plaintiff's Civil Conspiracy Claim Should Be Dismissed

To sustain a claim for civil conspiracy, Plaintiff must show that the Defendants entered into "an agreement between two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means which results in damage to plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007).

The Clare Medical Defendants' Motion to Dismiss pointed out that Plaintiff had not alleged facts to show an actual agreement between the Defendants, rendering the claim fatally defective as a matter of law.  Plaintiff's Response does not contest this deficiency, but assures the Court that its allegations "clearly show that the Clare Medical Defendants acted in concert with Mr. Bakkar … to defraud" Plaintiff.  (Br. at PgID #561.)  Here, again, Plaintiff is asking the

Court to give it credit for allegations it never actually makes.

Plaintiff has not alleged facts to show the required "meeting of the minds" necessary to support a conspiracy claim. Plaintiff's conclusory allegation that McKesson, Bakkar, Clare Medical, and Mr. Toms "entered into an agreement to engage in unlawful activities" is precisely the type of pleading that *Twombly* itself rejected. *Twombly* held that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." 550 U.S. at 557. Plaintiff does not adequately plead facts to support a reasonable inference of an "agreement" to engage in illegal behavior and therefore the claim should be dismissed. *See also Feeley v. Total Realty Management*, 660 F. Supp. 2d 700, 712 (E.D. Va. 2009) (holding bare allegation of an "agreement" in support of civil conspiracy claim as insufficient to survive Rule 12 scrutiny because "nothing … elevates the allegations from possible parallel conduct to an indication that there was an actual meeting of the minds.")

Plaintiff's Amended Complaint alleges two bases for civil conspiracy: "fraud" and "tortiously interfering with Kimberly-Clark's prospective economic advantage." (Am. Compl. ¶ 138.) Plaintiff's attempt to base civil conspiracy on "fraud" while omitting the Clare Medical Defendants from the actual fraud *claim* is nothing more than an end-run around Rule 9(b)'s requirement to state "with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires that, in alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." "Under Rule 9(b), particularity of pleading is required with regard to the time, place, speaker, and contents … the who, what, where, why and when." *Morris v. Wachovia Securities, Inc.*, 277 F. Supp. 2d 622, 645 (E.D. Va. 2003) (Payne, J.) Plaintiff concedes that it did not plead "the who, what, where, and why" of the alleged fraud and therefore that aspect of the claim falls at the outset. And, Plaintiff admits it cannot show reliance

on a Clare Medical statement, an essential element of fraud.

Plaintiff says its "civil conspiracy claim also rests on other wrongful acts and unlawful means."  (Br. at PgID #562.)  But the only other "wrongful act" alleged in the Amended Complaint is "tortiously interfering with Kimberly-Clark's prospective economic advantage." (Am. Compl. ¶ 138b.)  In other words, Plaintiff's only remaining support for its civil conspiracy claim is its tortious interference with a business expectancy claim.  If accepted, Plaintiff's position would turn every tortious interference with a business expectancy claim into a *civil conspiracy*.  Plaintiff points to nothing in Virginia law to support such a dramatic expansion to the civil conspiracy cause of action and the Clare Medical Defendants located none.

With its two plead grounds for civil conspiracy fatally defective as a matter of law, Plaintiff's Response again resorts to making new allegations outside the Amended Complaint. Plaintiff says that Clare Medical's alleged "li[e] to Vizient" and "lie[s] to the general public about" the source of the product are "wrongful acts."  (Br. at PgID #652.)  First, neither of these were plead as support of the civil conspiracy claim in the Amended Complaint.  Second, they have nothing to do with a conspiracy, which is an "agreement" to engage in unlawful means. The whole point of a civil conspiracy claim is alleging that "wrongful acts" were committed with another to further unlawful ends.  But here Plaintiff tries to blur the lines by protesting that it has alleged "wrongful acts" when those acts have nothing to do with the inadequately alleged conspiracy.  The claim should be dismissed.

## VI.    Plaintiff's Breach Of Contract Claim Against Clare Medical Should Be Dismissed

Plaintiff's breach of contract claim related to an alleged contract between Clare Medical and Vizient should be dismissed because Plaintiff has not alleged damages.  The Vizient screenshot attached by Plaintiff shows a "Member Start Date" for Clare Medical of July 1, 2017. Plaintiff's Amended Complaint seeks damages for sales from McKesson to Clare Medical "from

May 21 to November 12, <u>2016</u>."   (Am. Compl. ¶45.)   Accordingly, even if the alleged representation to Vizient in July of 2017 actually happened, *and* there was a contract that governed it, *and* its terms were breached, *and* Plaintiff was a third-party beneficiary—all assumptions Plaintiff has plead zero facts to support—the claim must *still* be dismissed because Plaintiff has not alleged how it was damaged by such a representation in July of <u>2017</u>.   For the reasons stated above, Plaintiff has also not alleged facts to show that any damages suffered were caused by a breach of this alleged contract since Plaintiff has not alleged that McKesson relied on the 2017 Vizient post when it made sales to Clare Medical in 2016.   The claim should be dismissed.

**VII.**   <u>**Plaintiff's Claim For Unfair Trade Practices Should Be Dismissed**</u>

Plaintiff concedes that this claim must be dismissed if the Court determines that Virginia law applies.   Thus, for the reasons stated in Section I, the claim should be dismissed.

The Clare Medical Defendants' Motion to Dismiss also showed that even if Wisconsin law did apply, Plaintiff had not alleged publications by Venuity in Wisconsin, a prerequisite for liability under Wis. Stat. § 100.18.   Plaintiff's Response says "eBay and Amazon both operate in Wisconsin, just as they do in other parts of the country."   But here, again, Plaintiff's Response is relying on allegations not contained in the Amended Complaint.   Indeed, to support its claims, Plaintiff's Response relies on *new evidence* brought up for the first time in its Response brief. (Br. at PgID #564, n.10.)   This is not permissible at the Rule 12 stage.   *See, e.g., Blackwell v. Gen. Dynamics Land Sys., Inc.*, 2010 WL 2639829, at \*2 (E.D. Va. June 28, 2010) (refusing to consider "exhibits attached to the Plaintiff's memorandum in opposition to [Rule 12 motion].")

Plaintiff's claims must rise or fall based on the allegations in the Amended Complaint. Plaintiff's Amended Complaint did not allege publications in Wisconsin and none of the cases cited by Plaintiff support the argument that the reach of Wis. Stat. § 100.18 extends to a non-

Wisconsin entity whose publication actions occur outside of Wisconsin.  Because Plaintiff has not alleged publications by Venuity in Wisconsin, Plaintiff has not alleged a viable claim under the statute.

**VIII.   Plaintiff's Lanham Act Claim Should Be Dismissed**

The Lanham Act, 15 U.S.C. § 1125(a), allows a claim arising out of a "false or misleading representation of fact" which, "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or another person's goods, services, or commercial activities."  *Id.*  Plaintiff says that Venuity's alleged statement on its alleged Amazon page that the Huggies diapers were "unclaimed freight" and "overstock merchandise" falls within this language.  Plaintiff is wrong.  These statements having nothing to do with the "nature," "characteristics," "qualities" or "geographic origin" of the *goods*.  Accordingly, they do not fall within the reach of the law Plaintiff relies upon.

But, Plaintiff says, "the diapers should practically be viewed as stolen goods" and "reasonable consumers would be reluctant to buy illegally-procured goods."  (Br. at PgID #565.) Good grief.  Plaintiff does not plead conversion.  Plaintiff does not plead trespass to chattels. Plaintiff does not allege that the goods were stolen.  But now Plaintiff wants the Court to sustain its Lanham Act claim on the basis that the diapers Clare Medical lawfully purchased from McKesson and McKesson lawfully purchased from Plaintiff "should practically be viewed as stolen" and on the basis of their character as "stolen" goods the Court should find that a reasonable consumer was misled into thinking they were not "stolen."  Plaintiff's hyperbolic speculative overreach should be rejected and the claim dismissed on the statute's plain language.

Plaintiff's attempt to distinguish the *Monoflo* case should also be rejected.  This Court held squarely in *Monoflo* that a misrepresentation by the defendant that it was an "exclusive … sales agent" of the Plaintiff manufacturer was not actionable under the Lanham Act because the

representation did not relate to "the quality, nature, or characteristic" of the product being sold. *Monoflo Intern., Inc. v. Sahm*, 726 F. Supp. 121, 123 (E.D. Va. 1989).  Plaintiff says *Monoflo* can be distinguished because "in this case, the Clare Medical Defendants were falsely representing the goods themselves, claiming they were 'unclaimed freight' and 'overstock merchandise.'"  (Br. at PgID #566.)  First, Plaintiff pleads no facts to show these statements are about Kimberly-Clark's products or that anyone relied on the alleged statements to buy Plaintiff's products.   Second, Plaintiff does not explain why this distinction should make a difference.  Saying Venuity offers for sale "unclaimed freight" and "overstock merchandise" is a representation about how goods were acquired prior to resale, not a representation about the "quality, nature, or characteristic" of the goods themselves.  Plaintiff provides no reason why a seller calling itself an "exclusive sales agent" is any different from a seller calling itself a seller of "overstock merchandise."   In both instances, the alleged representations relate to how the seller obtained the goods, not the goods themselves. [2]  The representations alleged by Plaintiff fall outside of the plain language of the statute and the claim should be dismissed.

## IX.   Plaintiff's "Alter Ego" Claim Should Be Dismissed Because "Alter Ego" Is Not A Cause Of Action

Plaintiff's claim for "Alter Ego/Misuse of Corporate Form" should be dismissed because "alter ego" is not a cause of action under Virginia law.  In Response, Plaintiff says, "Kimberly-Clark does not bring an alter-ego claim as a standalone claim."  This would come as a surprise to Plaintiff's Amended Complaint, which, under the caption "Sixteenth Cause of Action," lists

---

[2] The lone case cited by Plaintiff, *Standard Process, Inc. v. Total Health Discount, Inc.*, 559 F. Supp. 2d 932 (E.D. Wisc. 2008), is inapposite because the defendant there did not argue that the misrepresentations alleged fell outside the language of the Lanham Act.  The *Standard Process* court therefore had no occasion to address the issue and Plaintiff's insinuation that the decision did address the issue is false.

"Alter Ego/Misuse of Corporate Form."  (Am. Compl. at PgID #346.)  Moreover, Plaintiff has not alleged facts to show that the Clare Medical Defendants did not observe the corporate form and formalities, a fatal deficiency to its attempt to pierce the corporate veil.  The claim should be dismissed.

**X.**      **Plaintiff's Claims Against Herb Toms Should Be Dismissed Because Plaintiff Has Not Alleged Sufficient Facts To Pierce The Corporate Veil**

The Clare Medical Defendants' Motion to Dismiss shows why Plaintiff's attempt to impose liability on Mr. Toms *personally* should be set aside, because Plaintiff merely repeated the hornbook definition of an "alter ego" entity and then inserted the names of the Clare Medical Defendants.   The Clare Medical Defendants further demonstrated that Plaintiff's attempt to pierce the corporate veil should also fail because Plaintiff failed to adequately plead Virginia's heightened standard which requires that the Plaintiff "establish 'that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime.'"  *Perpetual Real Estate Svcs., Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545, 548 (4th Cir. 1992) (quoting *Cheatle v. Rudd's Swimming Pool Supply Co., Inc.*, 360 S.E.2d 828, 831 (Va. 1987)).

In its Response, Plaintiff points to a single instance of the Amended Complaint using the word "conceal" and declares the Virginia test satisfied.  (Br. at PgID #567) (citing Am. Compl. ¶ 66.)   The paragraph Plaintiff relies upon alleges that "Upon information and belief, Toms exercises complete control over each of these entities, as well as Clare Medical.  Exercising that control, Toms caused Clare Medical to transfer the products it improperly purchased at acute-care hospital pricing to MDR and Venuity in order to resell those products to consumers, while concealing the fact that they had been acquired by Clare Medical."  (Am. Compl. ¶¶ 66.)

Plaintiff does not say *why* this allegation satisfies Virginia's test, nor does Plaintiff cite any law.  Plaintiff just repeats Paragraph 66 and declares that it alleges what Virginia law

requires "precisely."  But Plaintiff is wrong.  Plaintiff does not allege that Venuity claimed to be anything different from Clare Medical: i.e. a reseller.  Thus, Plaintiff does not explain why Venuity selling goods purchased by Clare Medical could plausibly be seen as an attempt to "disguise their wrongful acquisition."

The Fourth Circuit has set out "several factors" that "guide the determination of whether one entity constitutes the alter ego of another.  *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 544 (4th Cir. 2013).  The factors "include gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities and maintain proper corporate records, non-functioning of officers, control by a dominant stockholder, and injustice or fundamental unfairness."  *Id.*  Plaintiff has not alleged that any of the Clare Medical Defendants were undercapitalized, failed to observe the corporate form, failed to observe corporate formalities, or the like.

Plaintiff ignores *all* of these factors and points only to Mr. Toms' status as the President of the three companies and his ownership of stock.  But the Fourth Circuit has already held squarely that even "one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil." *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 444 (4th Cir. 1999).  As Plaintiff has not alleged any other bases for piercing the corporate veil, the claims against Mr. Toms should be dismissed.

## CONCLUSION

The Court should dismiss the claims against the Clare Medical Defendants.

Respectfully submitted,

/s  Thomas G. Connolly
Thomas G. Connolly
(Virginia State Bar No. 29164)
Harris, Wiltshire & Grannis LLP
1919 M. Street, N.W. 8th Floor
Washington, D.C.  20036-3537
Telephone:  (202) 730-1301
tconnolly@hwglaw.com

Michael P. Coakley (admitted *pro hac vice*)
Conor T. Fitzpatrick (admitted *pro hac vice*)
Miller, Canfield, Paddock and Stone, PLC
150 West Jefferson, Suite 2500
Detroit, MI  48226
Telephone:  (313) 963-6420
Coakley@millercanfield.com
Fitzpatrick@millercanfield.com

*Counsel for the Clare Medical Defendants*

Dated:  May 29, 2018

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 29, 2018 I caused a true and correct copy of the foregoing to be filed

using the Court's CM/ECF system which will serve all counsel of record.

/s/     Thomas G. Connolly
Thomas G. Connolly (VSB No. 29164)
Harris, Wiltshire & Grannis LLP
1919 M. Street, N.W. 8th Floor
Washington, D.C.  20036-3537
Telephone:  (202) 730-1301
tconnolly@hwglaw.com

31503147.1\157275-00001